THE DAGO.

UNITED STATES v. THE DAGO.

(Circuit Court of Appeals, Fourth Circuit.   May 22, 1894.)

No. 67.

BILL OF HEALTH—PORT OF DEPARTURE.
    A merchant ship bound for the United States must (27 Stat. 449) procure a bill of health "from the consul or other consular officer of the United States at the port of departure."   *Held,* that "the port of departure" is not the last port at which the ship stops while bound for the United States, but the port from which she cleared.

Appeal from the District Court of the United States for the District of Maryland.

This was a libel by the United States against the British steamship Dago to enforce a forfeiture.   The district court dismissed the libel, and libellant appeals.

John T. Ensor, for the United States.

J. Wilson Leakin, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and JACKSON, District Judge.

GOFF, Circuit Judge. This is an appeal from a decree rendered by the district court of the United States for the district of Maryland dismissing a libel filed on behalf of the United States against the steamship Dago. It was charged in the libel that the steamship had not complied with the provisions of the act of congress approved February 15, 1893, entitled "An act granting additional quarantine powers and imposing additional duties on the marine hospital service." 27 Stat. 449. It was alleged that the Dago cleared from a certain foreign port, the port of Bristol, England, for the port of Baltimore, in the United States, on the 10th of July, 1893, without having obtained a bill of health, as was required by section 2 of said act of congress; and also that, having cleared and sailed from said port of Bristol at the time mentioned, she did, on the 2d day of August, 1893, unlawfully enter the port of Baltimore, in the United States, without having obtained a bill of health, as was required by the said act of congress. The libel, which was filed August 5, 1893, sets forth that the Dago was seized by the collector of customs at the port of Baltimore, as forfeited to the United States, to be released upon the payment of not more than $5,000, the exact amount to be determined by the court. The answer of the steamship, filed September 22, 1893, claimed that she came to the port of Baltimore provided with a bill of health in all respects in accord with the requirements of the law, obtained at Newport, in Wales, her last port of departure, from Great Britain, and she insisted that no other bill of health was required of her by the law.

The said act of congress, or the parts thereof necessary to consider in connection with this case, read as follows:

"That it shall be unlawful for any merchant ship or other vessel from any foreign port or place to enter any port of the United States except in accordance with the provisions of this act, and with such rules and regulations of state and municipal health authorities as may be made in pursuance of, or consistent with this act; and any such vessel which shall enter, or attempt to enter, a port of the United States in violation thereof, shall forfeit to the United States a sum, to be awarded in the discretion of the court, not exceeding five thousand dollars, which shall be a lien upon said vessel, to be recovered by proceedings in the proper district court of the United States. In all such proceedings the United States district attorney for such district shall appear on behalf of the United States, and all such proceedings shall be conducted in accordance with the rules and laws governing cases of seizure of vessels for violation of the revenue laws of the United States.

"Sec. 2. That any vessel at any foreign port, clearing for any port or place in the United States, shall be required to obtain from the consul, vice-consul, or other consular officer of the United States at the port of departure, or from the medical officer where such officer has been detailed by the president for that purpose, a bill of health, in duplicate, in the form prescribed by the secretary of the treasury, setting forth the sanitary history and condition of said vessel, and that it has in all respects complied with the rules and regulations in such cases prescribed for securing the best sanitary condition of the said vessel, its cargo, passengers, and crew; and said consular or medical officer is required, before granting such duplicate bill of health, to be satisfied that the matters and things therein stated are true; and for his services in that behalf he shall be entitled to demand and receive such fees as shall by lawful

regulation be allowed, to be accounted for as is required in other cases. The president, in his discretion, is authorized to detail any medical officer of the government to serve in the office of the consul, at any foreign port, for the purpose of furnishing information and making the inspection and giving the bills of health hereinbefore mentioned. Any vessel clearing and sailing from any such port without such bill of health, and entering any port of the United States, shall forfeit to the United States not more than five thousand dollars, the amount to be determined by the court, which shall be a lien on the same, to be recovered by proceedings in the proper district court of the United States.

"Sec. 3. That the supervising surgeon-general of the marine hospital service shall, immediately after this act takes effect, examine the quarantine regulations of all state and municipal boards of health, and shall, under the direction of the secretary of the treasury, co-operate with and aid state and municipal boards of health in the execution and enforcement of the rules and regulations of such boards and in the execution and enforcement of the rules and regulations made by the secretary of the treasury to prevent the introduction of contagious or infectious diseases into the United States from foreign countries, and into one state or territory or the District of Columbia from another state or territory or the District of Columbia. * * * The secretary of the treasury shall make such rules and regulations as are necessary to be observed by vessels at the port of departure and on the voyage, where such vessels sail from any foreign port or place to any port or place in the United States, to secure the best sanitary condition of such vessel, her cargo, passengers and crew; which shall be published and communicated to and enforced by the consular officers of the United States. None of the penalties herein imposed shall attach to any vessel or owner or officer thereof until a copy of this act, with the rules and regulations made in pursuance thereof, has been posted up in the office of the consul or other consular officer of the United States for ten days in the port from which said vessel sailed; and the certificate of such consul or consular officer over his official signature shall be competent evidence of such posting in any court of the United States."

The only question in the case is, we think, whether or not the steamship Dago was required to obtain a bill of health at Bristol, England, at the time she cleared and departed therefrom for Baltimore, in the United States, by way of Newport, Wales. It was contended by the respondent below that, as she stopped on her way at Newport, it was only necessary to obtain a bill of health at that place. It was clearly shown by the testimony —in fact, it was admitted—that the Dago cleared from Bristol, England, via Newport, Wales, for Baltimore, in the United States, and that she was provided with a bill of health from the port of Newport, Wales, but that she did not obtain a bill of health at the port of Bristol at the time of departing therefrom, and also that she was not provided with one at the time she entered the port of Baltimore. The district court, holding that the Dago was not guilty of a breach of said act of congress, dismissed the libel. The United States petitioned for and was allowed an appeal.

The act mentioned was passed to prevent, if possible, the introduction into the United States of contagious and infectious diseases from any foreign port. It makes it unlawful for any vessel from any foreign port to enter any port of the United States except in the manner provided for by said legislation and the rules and regulations established under its provisions; and it requires any vessel at any foreign port, clearing for any port in the United States, to obtain a bill of health at the port from which it so clears and de-

parts. The regulations promulgated by the secretary of the treasury, dated February 24, 1893, in pursuance of said act of congress, are in part as follows:

"Art. 1. Masters of vessels about to depart from any foreign port for a port in the United States must procure from the United States consular or medical officer, at such port of departure, a bill of health."

The act of congress and the rules and regulations authorized by it were duly posted in the office of the consul at Bristol, England, in the manner required by law. The master of the Dago was aware that a bill of health was required, and procured it at Newport in Wales. To hold that this action on his part was a compliance with the terms of the law and regulations in such cases made and provided, would permit a vessel to clear from an infected foreign port, at which it could not properly obtain such bill of health, and by stopping on the way at another port, not infected, secure the bill of health that would enable it to enter the ports of the United States, thereby defeating the object had in view when said act of congress was enacted. It is intended by said legislation to furnish the health and quarantine authorities of this country with information relative to the sanitary condition of the ports of departure of vessels desiring to enter the ports of the United States. It is made the duty of the secretary of the treasury and of the supervising surgeon general of the marine hospital service to co-operate with and aid state and municipal boards of health in the execution and enforcement of the rules and regulations made by the secretary of the treasury to prevent the introduction of contagious or infectious diseases into the United States from foreign countries; and the secretary of the treasury is required to make such rules and regulations as are necessary to be observed by vessels at the port of departure and on the voyage, where such vessels sail from any foreign port or place to any port or place in the United States, to secure the best sanitary condition of such vessel, her cargo, passengers, and crew, which shall be published and communicated to and enforced by the consular officers of the United States. By the regulations so authorized and promulgated, the United States consul at the port of departure is required to certify that the vessel has complied with the rules made under the act now in question, and that the vessel leaves his port bound for a particular port in the United States. If the vessel so bound for the United States stops at other foreign ports, the consul of the United States at which such calls are made must give a similar certificate or consular visa of the bill of health, as to the passengers, their effects, and the cargo taken on the vessel at such ports, and also as to the condition of the vessel, passengers, and crew since it left the port of departure. The protection intended by the legislation is of great and universal importance, and the provisions of the rules and regulations are not severe, nor are they burdensome, but are made with due regard to the interests of all concerned, and are necessary both to the comfort of the individual citizen and the safety of the general public. We do not think the Dago complied with the requirements of said act of congress when she procured the bill of health at Newport, Wales. She should have se-

cured it at Bristol, England, her port of departure. She violated the law, and ignored the rules and regulation provided for by it. It follows that the decree of the district court for the district of Maryland must be reversed, and the cause remanded to said court for such further proceedings as may be proper; and it is so ordered.